IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

                                                            REPORT AND
                          Plaintiff,                       RECOMMENDATION

     v.

                                                        07-CR-90-S

THOMAS TRAMMELL,

                          Defendant.

_____

## REPORT

Before the court in this bank robbery case is defendant Thomas Trammell's motion to suppress a handful of receipts and bank statements seized during execution of a Minnesota state search warrant.[1] Trammell contends that the agents had not listed these items, either specifically or by category, in their warrant, and that these items were not susceptible to seizure under the plan view doctrine. Therefore, it was unreasonable for the police to seize them. The government relies on its interpretation of the plain view doctrine to oppose Trammell's motion. I agree with the government that it was appropriate for the agents to look at these documents and that the "contraband" nature of the documents–or more accurately, their evidentiary value to the bank robbery investigation–was plain. Therefore, this court should not suppress this evidence.

The parties appear to have agreed on the material facts without an evidentiary hearing. Based on their written submissions, I find these facts:

---

[1] Trammell also moved to suppress a student handbook/planner, but the government has conceded that its agents should not have seized this item and that it cannot use it as evidence. *See* Brief in Opposition, dkt. 18, at 4. Therefore, no court action is necessary on this piece of Trammell's motion.

**FACTS**

On January 5, 2006, authorities in Minnesota arrested Thomas Trammell on a charge of robbing a bank in Forest Lake, Minnesota. At that time Trammell was living with his wife Amanda in an apartment on Cleveland Avenue in Green Isle, Minnesota. Following Trammell's arrest, agents linked him to the July 8, 2005, robbery of the First National Bank of Hudson, Wisconsin at which the robber got away with $2101. Bank cameras had captured images of the robber. Agents knew that the Hudson bank robber also had been videotaped in a nearby Wal-Mart store accompanied by an unknown woman about 30 minutes before the bank heist.

On January 10, 2006, agents sought and obtained from a Minnesota state court a warrant to search Trammell's apartment for clothing of the sort worn by the Hudson bank robber, for sales receipts and other documents relating to the Wal-Mart store visit, and for receipts, papers, and other documents indicating travel by Trammell to Hudson, Wisconsin the week of July 8, 2005. The agents went to Trammell's apartment to execute their warrant. Trammell still was in custody for the Minnesota bank robbery but Amanda was home with her children. She agreed to answer the agents' questions. Agents showed Amanda stills of images taken from the Hudson bank video and the Wal-Mart video. Amanda acknowledged the uncanny resemblance between the robber and Trammell, and between herself and the woman in the Wal-Mart, but she would neither confirm nor deny the identities. Amanda admitted that things had been tough financially for the family for some time. Amanda consented to a search for clothing of the sort worn by the robber seen in the Hudson bank video, obviating the need to execute the warrant. The agents did not find any clothing of interest to them.

The agents followed up on leads obtained from Amanda and confirmed that on July 9, 2005, Amanda had wired $650 via Western Union to Car Max in Hudson to pay off a car loan. On January 17, 2006, the agents sought and obtained a second warrant for Trammell's apartment. They sought the same clothing, same types of documents, plus documents related to the car loan and any documents evidencing employment in Hudson for Trammell. Agents executed this warrant that same day. Among the items seized by the agents were:

    (1) June 29, 2005 Klein Bank notice of NSF, indicating a returned check in the amount of $168.23 and an account balance of minus $420.12.

    (2) July 8, 2005 pay stub for Amanda Trammell in the amount of $156.75.

    (3) July 9, 2005 Western Union receipt for $650 paid to Loan Max.

    (4) July 9, 2005 County Market Receipt indicating the use of a $100 bill to pay a $35.55 grocery balance.

    (5) July 9, 2005 receipt for purchase of used Sony Play Station and discs for $149.99.

    (6) Car loan documents from Loan Max in Hudson.

*See* Property Receipt, dkt. 15, Exh. 6.

## ANALYSIS

Trammell has moved to suppress items (1), (4) and (5), contending that they were not included in the warrant's list of items to be seized and were not subject to off-warrant seizure pursuant to the plain view doctrine. *See* Affidavit of David Geier, dkt. 15 at 2-3. The

government disagrees, claiming that the evidentiary value of the challenged items was sufficiently apparent to justify seizure. The government is correct.

The government supports its argument with *Russell v. Harms*, 397 F.3d 458 (7th Cir. 2005), the Seventh Circuit's most thorough recent case addressing the plain view doctrine. The Fourth Amendment forbids general warrants, instead requiring that search warrants particularly describe the items to be seized. A warrant must provide sufficient guidance to allow reasonable certainty as to what types of items or documents may be seized. *Id.* at 464.

Even so, searching agents are not necessarily limited to the types of documents and items actually listed in the warrant. They also may seize additional evidence that falls within the plain view doctrine, which allows an agent to seize any additional object or document if: (1) the agent has a legal right to be in the place whence he sees this item; (2) The officer has a lawful right of access to the object itself; and (3) The object's incriminating nature is immediately apparent to the agent. *Id.* at 465. "The incriminating nature of an object is 'immediately apparent' if, under the circumstances, the officer has probable cause to believe that the item is linked to criminal activity." *Id.* Put another way, agents may seize any document that, under the circumstances known to them, they have probable cause to believe was evidence of a crime. *Id.*

Here. Trammell does not dispute that the underlying search warrant was valid, and that the agents had a right to look at all documents on the premises to see if they fit within the uncontested categories of evidence subject to seizure. His point is that the challenged documents were not "per se" items of criminal activity and therefore are not within the purview of the plain view doctrine. *See* dkt. 15 at ¶ 14; *see also* Defendant's Reply, dkt. 19, at 4-5. But

as the government points out, the plain view doctrine is not limited to actual contraband. If the searching agents, based on what they already knew, had probable cause to believe that the disputed documents were evidence of the Hudson bank robbery, then they were justified in seizing these documents.

Probable cause is a low evidentiary threshold,[2] and "relevance" is broadly defined.[3] When the agents began their January 17 search, they already knew that: for a long time prior to July 2005, the Trammell family had been financial strapped; on July 8, 2005, someone who looked just like Trammell robbed a bank of $2101, and someone who looked an awful lot like Amanda was with that man in Hudson that day; the very next day, Amanda came up $650 with cash to pay off a car loan. Therefore, the agents' discovery, during their permitted perusal of the Trammells' personal papers, of documents corroborating the family's financial straits and evidencing an unusual cash windfall the day after the bank robbery, provided probable cause to believe that these documents were directly relevant to proving that Trammell had robbed the Hudson bank.

---

[2] Probable cause exists if there is sufficient evidence to induce a reasonably prudent person to believe that an item is evidence of a crime. The inquiry is practical, not technical. *See United States v. Watzman*, 486 F.3d 1004, 1007 (7th Cir. 2007). The focus must be on what the evidence shows as a whole. *United States v. Caldwell*, 423 F.3d 754, 760 (7th Cir. 2005). Probable cause requires only a probability or a substantial chance of criminal activity, not an actual showing of such activity. *United States v. Roth*, 201 F.3d 888, 893 (7th Cir. 2000), *quoting Illinois v. Gates*, 462 U.S. 213, 244 (1983).

[3] F.R. Ev. 401 states that "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Not so fast, ripostes Trammell: lots of *non*-criminals overdraw their checking accounts; there is nothing suspicious about "purchasing food in a total amount that would not exceed a person's normal buying needs;" and there is nothing "outside of the normal realm of purchases by a non-criminal" for the Trammells to have bought a Play Station & discs for $150. Reply, dkt. 19, at 5. These observations are not incorrect as far as they go, but they don't come close to capturing the *gestalt* of the situation known to the searching agents. Sometimes, the sum of the probable cause circumstances is greater than their individual parts, establishing in their totality a fair probability that an item is probative evidence of a crime. That's why it is inappropriate to consider each piece of evidence individually in a "divide and conquer" approach; rather the focus must be on what the evidence shows as a whole. *See United States v. Caldwell*, 423 F.3d 754, 760-61 (7th Cir. 2005)(discussing probable cause for a search warrant).

"Spending sprees, like other evidence of pecuniary gain, tend to show participation in crimes where financial enrichment is the motive." *United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991) (fraud case); *see also United States v. Blackburn*, 992 F.2d 666, 669 n.1 (7th Cir. 1993)(bank robbery case). How is it that before the bank robbery the Trammell family didn't have two nickels to rub together, but on the day after they could pay off a $650 loan, spring for a $150 video game console, and buy groceries with a one-hundred dollar bill? This question almost answers itself. It was appropriate for the agents to seize the contested documents.

## RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Thomas Trammell's motion to suppress evidence.

Entered this 25th day of September, 2007.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

September 25, 2007

Laura Przybylinski Finn
Assistant United States Attorney
P.O. Box 1585
Madison, WI 53701-1585

David A. Geier
La Rowe, Gerlach & Roy, S.C.
P.O. Box 511
Madison, WI 53701-0511

     Re:   United States v. Thomas Trammell
           Case No. 07-CR-090-S

Dear Counsel:

     The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

     The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

     In accordance with the provisions set forth in the newly-updated memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before October 5, 2007, by filing a memorandum with the court with a copy to opposing counsel.

     If no memorandum is received by October 5, 2007, the court will proceed to consider the magistrate judge's Report and Recommendation.

     Sincerely,

8

                                                                                Connie A. Korth
                                                                                Secretary to Magistrate Judge Crocker

Enclosures
cc:     Honorable John C. Shabaz, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation.  Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those

portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.**  *See United States v. Hall,* **462 F.3d 684, 688 (7th Cir. 2006).**